UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL W. WILLIAMS,

                    Plaintiff,

        v.

BERNIE WARNER, et al.,

                    Defendants.

CASE NO. 15-cv-5655-BHS-JRC

REPORT AND RECOMMENDATION

NOTED:  September 16, 2016

This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is defendants' motion to dismiss, as well as the supplemental briefing in support. Dkt. 43, 96-98.

Due to a De Facto LWOPP classification in 2010, plaintiff had his custody level changed from minimum 3 to medium. Among other things, plaintiff alleges that the custody change resulted in the loss of various privileges that he earned because of his good performance, such as educational, housing and work opportunities, and that he lost

REPORT AND RECOMMENDATION - 1

his phone access and was afforded a decreased level of liberty. *See, e.g.*, Dkt. 19, ¶¶ 51, 57, 74. Because the "present inquiry is better suited for summary judgment, [as] after discovery, the district court may determine whether the [change in conditions] constitutes an 'atypical and significant hardship,' thus infringing upon a protected liberty interest under *Sandin*," the Court recommends that defendants' motion to dismiss plaintiff's Due Process claim be denied. *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003) (citations omitted).

Regarding defendants' motion to dismiss plaintiff's allegations of retaliation, Judge Settle has previously determined that discreet acts occurring prior to September of 2012 are outside the statute of limitations. Therefore, since this Court concludes that the alleged acts of retaliation are also discrete acts, and to the extent that the alleged acts of retaliation occurred prior to September, 2012, the motion should be granted with prejudice. However, this motion should be denied for the same reason for alleged discrete acts of retaliation occurring after September, 2012.

This Court recommends that defendants' motion to dismiss specifically plaintiff's claim of retaliation regarding threats of transfer should be denied because a threat can comprise an adverse action.

Similarly, this Court recommends that defendants' motion to dismiss plaintiff's claim of retaliation regarding the custody decisions in 2013 and 2015 should be denied because plaintiff pleads facts in support of his allegation of retaliatory motivation, alleging, for example, that after "transfers to H6, all De Facto LWOPP who had been working in their previous units were immediately given unit jobs as they opened, except

plaintiff." Dkt. 19, ¶ 60. According to plaintiff's amended complaint, the "distinguishing difference was that plaintiff was the only one challenging DOC's authority regarding the unlawful nature of the De Facto LWOPP category." *Id.*

However, because plaintiff has not provided any facts suggesting any risk of prolonging his incarceration, and has not suggested that any such facts exist, this Court recommends that defendants' motion to dismiss plaintiff's Ex Post Facto claim be granted with prejudice.

Finally, this Court recommends that defendants' motion to dismiss plaintiff's Equal Protection claim be denied because plaintiff has alleged facts demonstrating that he has been treated differently than others similarly situated.

## BACKGROUND

In 2005, plaintiff Michael Williams was convicted of various crimes in state court. Dkt. 19 ("Comp.") ¶ 47. Following plaintiff's conviction, the Washington Department of Corrections ("DOC") created a classification category called "De Facto Life Without the Possibility of Parole ("De Facto LWOPP"). *Id.* ¶ 50. In October 2010, plaintiff was classified as a De Facto LWOPP and his custody level was changed. *Id.* ¶¶ 54–56. Subsequent custody review hearings were held in May 2011, April 2012, 2013, and April 2015. *Id.* ¶¶ 61–62, 63–69. Plaintiff objected to his custody level and De Facto LWOPP classification at each of these hearings, but his custody level was maintained with an LWOPP override. *Id.*

On September 21, 2015, plaintiff filed a 42 U.S.C. § 1983 complaint against thirty-three defendants, including the State of Washington, DOC, and various DOC

employees (collectively "defendants"). Dkt. 9. Two days later, plaintiff filed an amended complaint, alleging defendants violated his due process, equal protection, and First Amendment rights, as well as the Ex Post Facto Clause. Comp. ¶¶ 75–85.

On October 19, 2015, defendants moved to dismiss, arguing plaintiff's claims are barred by the statute of limitations. Dkt. 43. Alternatively, defendants argued plaintiff failed to state a claim. *Id.* On December 15, 2015, this Court issued a Report and Recommendation on that motion to dismiss, to which objections were filed by both sides. Dkt. 84; *see also* Dkts. 85, 87. This Court first determined that plaintiff's claims are timely because the continuing violation doctrine applies. Dkt. 84 at pp. 6–8. Next, this Court recommended granting defendants' motion to dismiss because plaintiff failed to state a claim, *Id.* at pp. 8–17, and also recommended granting plaintiff leave to amend his equal protection, First Amendment retaliation, and ex post facto claims, as well as the personal participation of all named defendants. *Id.* at pp. 17–18. Finally, this Court recommended denying plaintiff leave to amend his due process claim. *Id.* at 18.

Defendants objected to the R&R, arguing that this Court erred by concluding that plaintiff's claims are timely and by granting plaintiff leave to amend his ex post facto claim. Dkt. 85. Plaintiff, in turn, argued that this Court erred by recommending that the Court deny plaintiff leave to amend his due process claim. Dkt. 87.

On February 16, 2016, Judge Settle declined to adopt the Report and Recommendation. Dkt. 89. Judge Settle noted that plaintiff filed his § 1983 suit in September 2015, and the applicable statute of limitations is three years. *Id.* at p. 3 (citing

*Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989). Thus, Judge Settle noted that any claims that accrued prior to September 2012 are barred by the statute of limitations. *Id.*

Construing plaintiff's complaint liberally, Judge Settle noted that plaintiff is challenging the decision to classify him as a De Facto LWOPP in October 2010, as well as the decisions to maintain his custody level in May 2011, April 2012, 2013, and April 2015. *Id.* (citing Comp. ¶¶ 61–62, 63–69). Although this Court, in the R&R, had determined that the continuing violation doctrine applied, in the Order declining to adopt the R&R, Judge Settle concluded that this determination rested on an erroneous legal standard. *Id.* at pp. 4-5.

Although prior "to *Morgan*, a plaintiff arguably could invoke the continuing violations doctrine by demonstrating . . . a series of related acts, one or more of which falls within the limitations period . . . ," (*id.* at p. 5 (quoting *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003) (internal quotation marks and citation omitted)), in *Morgan*, "the Supreme Court substantially limited the notion of continuing violations: 'discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'" *Id.* (quoting *Cherosky v. Henderson*, 330 F.3d 1243, 1246 (quoting *Morgan*, 536 U.S. at 122)). However, Judge Settle determined that the question remained as to if "the classification decision and the subsequent custody decisions constitute discrete acts." *Id.* at p. 5. In answering this question, Judge Settle found that the *Pouncil* decision is instructive. *Id.* at p. 5 (citing *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012)). Judge Settle discussed this Ninth Circuit decision as follows:

Pouncil was a "state prisoner serving a sentence of life imprisonment without parole ('LWOP')." *Pouncil*, 704 F.3d at 570. In 2002, Pouncil requested a conjugal visit. *Id.* The request was denied because a prison regulation did not allow LWOP prisoners to have conjugal visits. *Id.* at 570–71. In 2008, Pouncil requested another conjugal visit. *Id.* at 571. This request was also denied based on essentially the same prison regulation. *Id.* The Ninth Circuit held the 2008 denial constituted a discrete act that caused a new limitations period to run. *Id.* at 582–83. The Ninth Circuit explained that Pouncil's claims "[did] not stem from the policy regarding the denial of conjugal visits to LWOP prisoners, but rather from the individualized decisions that resulted from implementation of a policy originating from the [California Department of Corrections and Rehabilitation]." *Id.* at 582 (quoting *Cherosky*, 330 F.3d at 1245).

*Id.* at pp. 5-6.

Judge Settle concluded that based on *Pouncil*, "the decision to classify [plaintiff] as a De Facto LWOPP in October 2010 constitutes a discrete act—the alleged wrong occurred when plaintiff's classification status was changed." *Id.* at p. 6. Judge Settle also concluded that the "subsequent decisions to maintain plaintiff's custody level in August 2011, April 2012, 2013, and April 2015 also constitute discrete acts." *Id*. The Court, liberally construing plaintiff's complaint, noted that plaintiff "alleges that his custody level was revisited at each review hearing," and that "he objected to his custody level before these hearings, but the hearing officers declined to change his custody status." *Id.* Because Judge Settle concluded that each custody decision is best characterized as a discrete act, "the continuing violation doctrine does not apply." *Id.* (citing *Morgan*, 536 U.S. at 113). Judge Settle noted that not all of the alleged facts fall within the statute of limitations. *Id.* Because plaintiff only may bring claims that accrued prior to September, 2012, plaintiff's "due process, equal protection, and ex post facto claims are barred to the

1    extent they are based on the classification decision in 2010 and the custody decisions in

2    May 2011 and April 2012, [but that] [plaintiff] may nevertheless bring claims based on

3    the custody decisions in 2013 and April 2015." *Id.*

4          Although plaintiff's claims based on the 2013 and April 2015 custody decisions

5    are not time barred, Judge Settle concluded that it is not clear that plaintiff "has stated a

6    claim for relief based on those custody decisions." *Id.* at p. 7. That issue was referred to

7    this Court for further consideration. *Id.*

8          Regarding plaintiff's retaliation claim, Judge Settle noted that plaintiff "alleges he

9    objected to the De Facto LWOPP classification before the custody hearings, and

10   defendants retaliated against him because of his objections." *Id.* (citing Comp. ¶¶ 60–62,

11   65–69). Although defendants had not briefed fully if each alleged instance of retaliation

12   constitutes a discrete act, Judge Settle noted that if "each instance of retaliation is a

13   discrete act, then a new claim would accrue—and a new statute of limitations would

14   run—for each instance of retaliation." *Id.* (citing *Morgan*, 536 U.S. at 113). Judge Settle

15   noted that, conversely, "if each instance of retaliation is not a discrete act but a consistent

16   pattern of discrimination because of [plaintiff]'s continued objections, the continuing

17   violation doctrine could possibly apply." *Id*. However, because this issue had not been

18   fully addressed, Judge Settle did not determine within his Order whether or not plaintiff's

19   retaliation claims are time barred. *Id.*

20        As a result of that Order, plaintiff's "due process, equal protection, and ex post

21   facto claims [were] **DISMISSED with prejudice** to the extent those claims rely on acts

22   before September 2012." *Id.* at p. 8.

1    That Order was appealed to the Ninth Circuit by plaintiff, *see* Dkt. 90, however,

2    such appeal was dismissed on April 5, 2016, on the basis that the Ninth Circuit lacks

3    jurisdiction over the appeal because the Order challenged is not final or appealable. *See*

4    Dkt. 93.

5    On April 15, 2016, this Court ordered that defendants file a supplemental brief on

6    plaintiff's due process, equal protection, and ex post facto claims regarding the custody

7    decisions in 2013 and April 2015. Dkt. 94. Deadlines also were provided for a response

8    by plaintiff, and an optional reply by defendants. *See id*. Both sides filed supplemental

9    briefs. *See* Dkts. 96-98.

10

11

12    **STANDARD OF REVIEW**

13    A motion to dismiss can be granted only if the Amended Complaint, with all

14    factual allegations accepted as true, fails to "raise a right to relief above the speculative

15    level". *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

16    To survive a motion to dismiss, a complaint must contain sufficient factual
17    matter, accepted as true, to "state a claim to relief that is plausible on its
     face." A claim has facial plausibility when the plaintiff pleads factual
18    content that allows the court to draw the reasonable inference that the
     defendant is liable for the misconduct alleged. The plausibility standard is
19    not akin to a probability requirement, but it asks for more than a sheer
     possibility that a defendant has acted unlawfully.

20    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

21    A complaint must contain a "short and plain statement of the claim showing that

22    the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the pleading must be

23

24

more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

While this Court must accept all the allegations contained in the Amended Complaint as true, the Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649 (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While this Court is to construe a complaint liberally, such construction "may not supply essential elements of the claim that were not initially pled." *Pena*, 976 F.2d at 471.

## DISCUSSION

### I.      Whether or not plaintiff has a liberty interest in his custody level

Plaintiff complains that based on his classification as De Facto LWOPP, his custody level was changed. *Id.* ¶¶ 54–56. In his amended complaint, plaintiff alleges that he lost certain privileges as a result of the change in his custody level from minimum three to medium. *See* Dkt. 19 at ¶¶ 48, 56. However, defendants contend that plaintiff does not have an express or implied liberty interest in a particular custody level. Plaintiff responds that he does have such a state-created liberty interest, and sites state law that concerns privileges based on behavior.

Defendants contend that plaintiff's liberty interest only can arise either from the Due Process clause of the Fourteenth Amendment or state law. Dkt. 96, p. 2 (citing

*Mendoza v. Blodgett*, 960 F.2d 1425, 1428 (9th Cir. 1992)). Defendants further contend that plaintiff "holds no Fourteenth Amendment right to a particular custody level." *Id.* (citing *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987)). Plaintiff does not appear to contest this, but rather, contends that he has a state-created liberty interest. Dkt. 97, pp. 11-25.

Although defendants rely in part on the contention that plaintiff does not cite any state law creating a liberty interest, in his supplemental response, plaintiff cites RCW 72.09.130, which indicates that the Department of Corrections "shall adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of  . . . .  privileges." It further provides that the "system shall include increases or decreases in the degree of liberty granted the inmate within the programs operated by the department, [and] access to or withholding of privileges available within correctional institutions  . . . .  that an inmate can earn for good conduct and good performance." RCW 72.09.130. Although this statute does not discuss custody level directly, plaintiff contends that the privileges he lost that he should have retained due to his good behavior, were lost because of the change in his custody level for minimum three to medium. *See* Dkt. 19, ¶¶ 48, 56.

Although defendants cite a 1984 case in support of their argument that there is no state-created interest here, the court, in the case cited by defendants, explicitly relied on the lack of mandatory language when concluding that there was no state-created interest. *See* Dkt. 96 (citing *In re Dowell*, 100 Wash.2d 770, 774, 674 P.2d 666 (1984) ("Assuming that this statute refers to security classifications within an institution, the

1   section is permissive and not mandatory upon the Department")).  Plaintiff correctly

2   points out that the "Washington Legislature amended RCW 72.09.130 in 1995 using all

3   mandatory language." Dkt. 97, p. 15. Therefore, if this still was a valid factor when

4   determining if a state-created interest exists, which the Supreme Court has determined it

5   is not, the reasoning of defendant's cited case now would lean in favor of plaintiff. *See*

6   *Sandin v. Connor*, 515 U.S. 472, 480, 483 (1995) ("Instead of looking to whether the

7   State created an interest of 'real substance' comparable to the good time credit scheme of

8   *Wolff*, [*v. McDonnell*, 418 U.S. 539 (1974)] the Court asked whether the State had gone

9   beyond issuing merely procedural guidelines and had 'used language of an unmistakable

10  mandatory character' such that the incursion on liberty would not occur 'absent specified

11  substantive predicates.'  . . . .  we believe that the search for a negative implication from

12  mandatory language in prisoner regulations has strayed from the real concerns

13  undergirding the liberty protected by the Due Process Clause").

14          In addition to the argument regarding lack of a relevant state law, defendants also

15  argue that plaintiff's "minor custody change from minimum three to medium, does not

16  impose an 'atypical and significant hardship' upon [plaintiff] in relation to the ordinary

17  incidents of prison life." Dkt. 96, p. 3 (citations omitted). Defendants cite the Ninth

18  Circuit in support of their contention that in order to "find a violation of a state-created

19  liberty interest, the hardship imposed on the prisoner must be 'atypical and significant  . .

20  . .  in relation to the ordinary incidents of prison life.'" *Id.* at pp. 2-3 (citing *Chappell v.*

21  *Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013) (quoting *Sandin*, 515 U.S. at 483-84)).

In *Sandin*, the Supreme Court noted that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin*, 515 U.S. at 483-84 (citation omitted). The Supreme Court noted that "these interests will be generally limited to freedom from restraint which . . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484 (internal citations omitted). When making the determination of whether or not such a liberty interest had been created, the Supreme Court compared the situation the inmate experienced as a result of the challenged action versus the situation he would have been in had the action not been taken. *Id.* at 486 ("Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption." *Id.* (footnote omitted). In contrast, plaintiff here has alleged facts suggesting that he has suffered a major disruption in his environment as a result of the change in his custody level, as will be discussed further below. *See id.* In addition, the Supreme Court in *Sandin* appears to have found relevant that the challenged conditions only lasted for 30 days. *Id*. Here, in contrast, plaintiff alleges that the altered conditions that he is subjected to have been in place since 2010 and appear to be indefinite.

According to the Ninth Circuit, "*Sandin* requires a factual comparison between conditions, . . . . examining the hardship caused by the prisoner's challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (citations omitted). As noted by the Ninth Circuit, determining what "combination of conditions or factors would meet the test requires case-by-case, facts by

facts consideration." *Id*. (citing *Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996)). The Ninth Circuit noted the allegations by the plaintiff in that case, such as fewer contact visits with family and friends, more freedom to move without restraint, the ability to make monthly phone calls, the ability to possess more personal property in their cells, the ability to be better able to care for their health needs and get a job or learn a trade. *Id*. The Ninth Circuit noted that the prisoner's previous custody level was overall "less stressful." *Id*. The Ninth Circuit also noted that, unlike the situation in *Sandin*, it was determining, under Fed. R. Civ. P. 12(b)(6) "only whether [the plaintiff] sufficiently alleged facts that might support a claim entitling him to relief." *Id*. at 756. The Ninth Circuit concluded that the plaintiff "has met that burden." *Id*. (citing *Duffy v. Riveland*, 98 F.3d 447, 457 (9th Cir. 1996) ("remanding for further fact-finding by the district court because the limited record prevented a determination as to whether the challenged conditions at issue established a constitutionally protected liberty interest under *Sandin*")). The Ninth Circuit concluded that taking all of the plaintiff's allegations as true and construing them in the light most favorable to the plaintiff, "his allegations form the basis of a due process claim under section 1983." *Id*. at 756-57. The Ninth Circuit also noted that the "present inquiry is better suited for summary judgment, [as] after discovery, the district court may determine whether the [change in conditions] constitutes an 'atypical and significant hardship,' thus infringing upon a protected liberty interest under *Sandin*." *Id*. at 757. The Ninth Circuit noted that if "the district court determines that [the prisoner] possessed such a liberty interest, it must then determine whether [the prisoner] was given all process due under *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Id*. (also citing *Duffy*, 98 F.3d at 457).

Here, plaintiff alleges that the custody change resulted in the loss of various privileges that he earned because of his good performance, such as educational, housing and work opportunities, and that he lost his phone access and was afforded a decreased level of liberty. *See, e.g.*, Dkt. 19, ¶¶ 51, 57, 74. Viewing the allegations as true and in the light most favorable to plaintiff, it appears that plaintiff has met his burden to sufficiently allege facts that could support a Due Process claim for relief under section 1983. *See Sandin*, 515 U.S. at 483-84, 486 (citation omitted); *Jackson*, 353 F.3d at 756-57. Similar to the circumstance in the Ninth Circuit case just discussed, the "present inquiry is better suited for summary judgment, [as] after discovery, the district court may determine whether the [change in conditions] constitutes an 'atypical and significant hardship,' thus infringing upon a protected liberty interest under *Sandin*." *Jackson*, 353 F.3d at 757.Therefore, for the reasons stated, this Court recommends that defendants' motion to dismiss plaintiff's Due Process claim be denied.

## II. Retaliation

There are five basic elements for viable claim of First Amendment retaliation in the prison context: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) the inmate's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim v. Cry*, 584  F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). "Retaliation against prisoners for their exercise of this right [to file grievances] is itself a

constitutional violation, and prohibited as a matter of 'clearly established law.'"

*Brodheim*, 584 F.3d at 1269 (citations omitted).

### a.   Whether or not each alleged retaliatory act was a discrete act

In his amended complaint, plaintiff alleges that the determinations at his custody review hearings that he should be at medium custody level instead of minimum three violated his due process rights, among other things. However, Judge Settle already has concluded that the "decisions to maintain plaintiff's custody level in August 2011, April 2012, 2013, and April 2015 [] constitute discrete acts," and hence, that the decisions occurring before September, 2012 were barred by the statute of limitations. Dkt. 89 at p. 6. Plaintiff's due process, ex post facto and equal protections claims were dismissed with prejudice to the extent that they relied on custody decision hearing prior to September, 2012. *Id.* at 8.

Plaintiff additionally alleges that the determinations at his 2013 and 2015 custody hearing that he should be maintained at the medium level were acts of retaliation. Although defendants contend that each of these alleged retaliatory acts was not a discrete act because plaintiff must "reach back" to 2010 for his original designation as De Facto LWOP to support his claim for retaliation, such contention is not persuasive. Although plaintiff was complaining about his De Facto LWOP status, which was determined earlier, and was complaining at each custody review hearing about his custody level, each act allegedly in retaliation for his complaints is a discrete act, based on the prior reasoning by this Court and the case law in support of this reasoning. Dkt. 89 at p. 6 (quoting *Pouncil*, 704 F.3d at 570-71).

As summarized by Judge Settle, in *Pouncil*, a prisoner was denied a conjugal visit in 2002 because of a prison regulation that did not allow LWOP prisoners to have conjugal visits, and again was denied a similar request in 2008 based on essentially the same prison regulation. *Id.* at p. 5 (citing *Pouncil*, 704 F.3d at 570-71). As noted by Judge Settle, the "Ninth Circuit held the 2008 denial constituted a discrete act that caused a new limitations period to run," based on the Ninth Circuit's reasoning that "Pouncil's claims '[did] not stem from the policy regarding the denial of conjugal visits to LWOP prisoners, but rather from the individualized decisions that resulted from implementation of a policy originating from the [California Department of Corrections and rehabilitation].'" *Id.* at 5-6 (citing *Pouncil*, 704 F.3d at 582). Based on this reasoning, Judge Settle concluded that the original "decision to classify [plaintiff] as a De Facto LWOPP in October 2012 constitutes a discrete act . . . . [and the] subsequent decisions to maintain [plaintiff's] custody level in August 2011, April 2012, 2013 and April 2015 also constitute discrete acts." *Id.* at p. 6.

Following this reasoning, even though plaintiff's grievances and complaints began in response to the initial decision to classify him as De Facto LWOPP, each time there was a custody hearing, plaintiff objected to his custody level and defendants made an individualized decision to implement the initial decision to classify plaintiff as De Facto LWOPP and again maintain his custody level at medium. Therefore, this Court concludes, based on Judge Settle's previous ruling, that each alleged act of retaliation was a discrete act.

As noted by Judge Settle, plaintiff "filed his § 1983 suit in September 2015, and the applicable statute of limitations is three years." *Id.* at p. 3 (citing *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989)). Therefore, any of the alleged retaliatory acts occurring prior to September, 2012 are barred by the statue of limitations. However, plaintiff also alleges that the custody decisions in 2013 and 2015 were retaliatory acts, as was, allegedly, defendants' subsequent alleged threat to move him to another institution or to less favorable housing in the same institution. Viewing plaintiff's allegations favorably and as true, these alleged acts all occurred after September, 2012.

For the reasons stated, defendants' motion to dismiss plaintiff's allegations, to the extent that the alleged acts occurred prior to September, 2012, should be granted with prejudice on the basis of the statute of limitations. However, this motion should be denied on the basis of the statute of limitations for alleged discrete acts occurring after September, 2012.

### b.  Whether or not plaintiff has stated a claim for retaliation

Regarding alleged acts occurring after September, 2012, plaintiff alleges that the custody decisions in 2013 and 2015 were retaliatory acts, as was, allegedly, defendants' subsequent alleged threat to move him to another institution or to less favorable housing in the same institution. *See* Dkt. 19, ¶¶ 68, 69, 82.

Defendants argue that plaintiff "must demonstrate some concrete injury suffered as a result of the defendants' alleged adverse action." Dkt. 96, p. 6 (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000)).  Regarding plaintiff's allegation that the

custody decisions in 2013 and 2015 were retaliatory acts, plaintiff alleges that he suffered

an injury from these decisions in that he was denied "his ability to access privileges

including work, education, and housing assignments" that he had earned on the basis of

his good behavior. Dkt. 19, ¶ 64; *see also* ¶¶ 68, 69. This Court concludes that plaintiff

has sufficiently alleged injury on the basis of the 2013 and 2015 custody decisions.

Similarly, regarding plaintiff's contention that defendants retaliated against him by

threatening to transfer "him to another institution or to a harsher environment within the

institution he is at  . . . ," plaintiff has alleged that defendants' alleged retaliation has

chilled "his desire to seek prompt remedy through administrative or legal avenues until

the situation became unbearable." *See* Dkt. 19, ¶ 82. As the Ninth Circuit has "stated

multiple times [that] 'a retaliation claim may assert an injury no more tangible than a

chilling effect on First Amendment rights," plaintiff has adequately alleged injury in his

retaliation claim regarding threats of transfer. *Brodheim v. Cry*, 584 F.3d 1262, 1270

(2009) (citations omitted). As noted by the Ninth Circuit, "the mere threat of harm can be

an adverse action, regardless of whether it is carried out because the threat itself can have

a chilling effect." *Id.*

Therefore, for the reasons stated, this Court recommends that defendants' motion

to dismiss plaintiff's claim of retaliation regarding threats of transfer should be denied.

Defendants also argue that plaintiff has not alleged facts suggesting that the

decisions at the 2013 and April 2015 custody review hearings were "because of"

plaintiff's protected speech. Dkt. 96, p. 6. However, viewing the allegations as true and in

the light most favorable to plaintiff, plaintiff clearly alleges that these determinations

were "in retaliation for [plaintiff's] challenging [the allegedly] unlawful behavior by DOC employees through administrative remedy and legal action." Dkt. 19, ¶ 68; *see also* ¶ 69. Although plaintiff does contend that the decisions were "pre-determined," viewing allegations in favor of plaintiff, the predetermination could have been a result of plaintiff's challenging the De Facto LWOPP policy and its application to him prior to both of the hearings. Plaintiff also pleads facts in support of his allegation, alleging that after "transfers to H6, all De Facto LWOPP who had been working in their previous units were immediately given unit jobs as they opened, except plaintiff." Dkt. 19, ¶ 60. According to plaintiff's amended complaint, the "distinguishing difference was that plaintiff was the only one challenging DOC's authority regarding the unlawful nature of the De Facto LWOPP category." *Id.* After an officer "stepped in on plaintiff's behalf and plaintiff was given a job assignment, [h]e was allowed to work exactly one (1) shift, and transferred to "G" unit." *Id.* After the transfer to G unit, "plaintiff was again denied programming opportunities, including work assignments." *Id.* Also supporting plaintiff's retaliation claim is plaintiff's allegation that when he asked why he had "lost five (5) custody points, going from 67 to 62 custody points with no change in behavior, CUS Jones stated that we can't very well justify keeping you in medium custody with maximum points can we." *Id.* at ¶ 63. Plaintiff also alleges that despite working the "whole month of August 2011, plaintiff was not paid." *Id.* at ¶ 65. Although these acts occurred prior to the expiration of the statute of limitations period, and thus cannot serve as an actionable discrete act of retaliation, they nevertheless can provide factual support for plaintiff's alleged retaliatory motive. Plaintiff also alleges that he was threatened with

transfer due to his exercise of his rights to seek administrative remedy and right of access to the courts. *Id.* at ¶¶ 82, 83.

Defendants also argue that plaintiff "does not assert the defendants' actions did not reasonably advance a legitimate correctional goal." Dkt. 96, p. 6. However, plaintiff did specifically allege that the initial policy decision to create the "De Facto LWOPP category out of thin air" has "no penological objective." Dkt. 19, ¶ 52. Viewing the allegations in the amended complaint favorably to plaintiff, and as argued by defendants, the determinations made at the custody review hearings resulted directly from this policy, and thereby, by implication, also did not reasonably advance legitimate correctional goal.

Defendants also argue that plaintiff has not alleged facts regarding any chilling of the exercise of his First Amendment rights. *See* Dkt. 96, p. 6. However, as noted, plaintiff specifically alleged that repeated denial to him of "privileges to which he is entitled by statute based on his good behavior and good performance [had the result of] chilling his desire to seek prompt remedy through administrative or legal avenues until the situation became unbearable." Dkt. 19, ¶ 82. Therefore, this Court concludes that this argument is not persuasive, as viewing plaintiff's allegations favorably, the adverse custody decisions and threats could chill a person of ordinary firmness from further First Amendment activities. *See Brodheim*, 584 F.3d at 1271 (citations omitted).

For the reasons stated, viewing plaintiff's allegations in the light most favorable to plaintiff, and construing them as true, this Court concludes that defendants' motion to dismiss plaintiff's claims of retaliation with respect to the 2013 and 2015 custody review decisions and with respect to threats of transfer should be denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

### III.    Ex Post Facto

Defendants contend that plaintiff "references no law which even approaches an Ex Post Facto Clause violation," noting that the Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Dkt. 96, p. 7 (quoting *California Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995) (internal quotation marks and citation omitted)). Defendants argue that plaintiff "provides no facts which demonstrate how the de facto LWOP label retroactively alters the definition of the crimes he committed or increases the punishment he receives for his criminal acts." *Id.* As noted by defendants, plaintiff's "judgment and sentence simply commits into the custody of the DOC for 550 months." *Id.* (citing Dkt. 43-1 at pp. 6-8). Plaintiff argues in a conclusory fashion that his judgment and sentence has been altered, as now is has been determined to be De Facto LWOPP. However, the Court concludes that defendants' argument is persuasive.

Because plaintiff has not provided any facts suggesting any risk of prolonging his incarceration, and has not suggested that any such facts exist, this Court recommends that defendants' motion to dismiss plaintiff's Ex Post Facto claim be granted with prejudice.

### IV.    Equal Protection

Defendants note that in order to state a section 1983 claim for violation of the Equal Protection Clause, plaintiff must allege facts demonstrating that defendants discriminated against plaintiff based on membership in a protected class. Dkt. 96, p. 8 (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)). Defendants note that prisoners are not a suspect/protected class, and also note that in order to state a

1   claim under a "class of one" theory, plaintiff must allege facts demonstrating that he has

2   been "'intentionally treated differently from others similarly situated and that there is no

3   rational basis for the difference in treatment.'" *Id.* (quoting *Willowbrook v. Olech*, 528

4   U.S. 562, 564 (2000)). Defendants contend that plaintiff has not alleged any facts

5   "demonstrating how defendants treated him differently than other similarly situated

6   inmates." *Id*. However, plaintiff alleges that after "transfers to H6, all De Facto LWOPP

7   who had been working in their previous units were immediately given unit jobs as they

8   opened, except plaintiff." Dkt. 19, ¶ 60. According to plaintiff's amended complaint, the

9   "distinguishing difference was that plaintiff was the only one challenging DOC's

10  authority regarding the unlawful nature of the De Facto LWOPP category." *Id.* After an

11  officer "stepped in on plaintiff's behalf and plaintiff was given a job assignment, [h]e was

12  allowed to work exactly one (1) shift, and transferred to "G" unit." *Id.* After the transfer

13  to G unit, "plaintiff was again denied programming opportunities, including work

14  assignments." *Id.* Therefore, plaintiff has provided allegations suggesting that he was

15  treated differently than others similarly situated. Therefore, this Court concludes that

16  defendants' arguments are not persuasive.

17          Because plaintiff has provided alleged facts suggesting that he has been treated

18  differently from the others similarly situated, this Court recommends that defendants'

19  motion to dismiss plaintiff's Equal Protection claim be denied.

20  
21  **V.   Qualified Immunity**

22          Defendants contend that they are entitled to qualified immunity, noting that prison

23  officials are shielded "from liability 'for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would have known'" (*see* Dkt. 96, pp. 9-10 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982))).

According to the Supreme Court, "government officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987) (citations omitted).

The first step in the qualified immunity analysis is whether or not the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendants'] conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (citation omitted). The second step is whether the right was clearly established at the time of the alleged violation. *Id.*

Defendants contend that even if any constitutional right was violated, plaintiff cannot identify any clearly established right that was violated. However, "[r]etaliation against prisoners for their exercise of [their First Amendment right to file grievances] is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim*, 584 F.3d at 1269 (citations omitted). Furthermore it is clearly established that due process is required before imposing on a prisoner any hardship that is "atypical and significant [] on the inmate in relation to the ordinary incidents of prison life." *Sandin v.*

*Connor*, 515 U.S. 472, 483-84 (1995); *Chappell v. Mandeville*, 706 F.3d 1052, 1063 (9th Cir. 2013).

For the reasons stated, this Court concludes that defendants' argument that qualified immunity is an appropriate alternative basis for dismissing plaintiff's damages claims is not persuasive.

## VI.     Plaintiff's request for leave to file amended complaint

Although plaintiff did not file a motion for leave to file an amended complaint, plaintiff requests leave to amend his complaint on the basis that he will be able to obtain equitable relief from application of the statute of limitations. If plaintiff subsequently files a motion for leave to file an amended complaint, with an attached proposed amended complaint, this motion will be considered by the Court. However, to the extent that certain claims already have been dismissed on the basis of statute of limitations, such claims have been dismissed with prejudice "to the extent those claims rely on acts before September 2012." Order declining to adopt the R&R, Dkt. 89 at p. 8. Therefore, any amendment cannot restore these claims. It appears that plaintiff requests leave to file an amended complaint solely in an attempt to restore claims that already have been dismissed with prejudice on the basis of statute of limitations. For this reason, even if plaintiff had properly requested leave to amend his complaint on this basis, plaintiff's request would be denied.

## CONCLUSION

This Court recommends that defendants' motion to dismiss plaintiff's Due Process claim be denied.

Case 3:15-cv-05655-BHS   Document 99   Filed 08/24/16   Page 25 of 25

Regarding defendants' motion to dismiss plaintiff's allegations of retaliation, to the extent that the alleged acts occurred prior to September, 2012, the motion should be granted with prejudice on the basis of the statute of limitations.

This Court recommends that defendants' motion to dismiss plaintiff's claim of retaliation regarding threats of transfer and regarding the custody decisions in 2013 and 2015 should be denied.

Because plaintiff has not provided any facts suggesting any risk of prolonging his incarceration, and has not suggested that any such facts exist, this Court recommends that defendants' motion to dismiss plaintiff's Ex Post Facto claim be granted with prejudice.

However, this Court recommends that defendants' motion to dismiss plaintiff's Equal Protection claim be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **September 16, 2016**, as noted in the caption.

Dated this 24th day of August, 2016.

J. Richard Creatura
United States Magistrate Judge