UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL W WILLIAMS,

             Plaintiff,

    v.

BERNARD E WARNER et al.,

             Defendants.

CASE NO. 3:15-CV-05655-BHS-JRC

REPORT AND
RECOMMENDATION

NOTED FOR: APRIL 28, 2017

Plaintiff alleges that due to a classification change in 2010, his custody level was changed from minimum to medium custody, which resulted in the loss of various privileges such as educational, housing and work opportunities and phone access. Dkt. 19. Presently before the Court is defendants' motion for summary judgment. Dkt. 104. Plaintiff has not filed a response to defendants' motion for summary judgment, even though defendants sent him a *Rand* notice, advising him that failure to respond could result in dismissal of his case. In addition, plaintiff's complaint was not signed under the penalty of perjury, and therefore does not serve as evidence to oppose defendants' motion.  While plaintiff's failure to respond does not entitle the moving

1  party to summary judgment by default, this Court may rely on the summary judgment motion, its

2  supporting materials, and any facts contained therein as undisputed for purposes of ruling on the

3  motion for summary judgment.

4      Based on the evidence and arguments presented, defendants' motion should be granted

5  because plaintiff has failed to meet his burden of proof.  Plaintiff has failed to show that

6  defendants lacked any legitimate penological objective in determining his classification status,

7  and the Court concludes that plaintiff has failed to sufficiently rebut defendants' summary

8  judgment showing regarding his First Amendment claim. Plaintiff has also failed to show that his

9  classification status resulted in an atypical and significant hardship, entitling plaintiff to any due

10  process protections. Accordingly, the Court recommends that defendants' motion for summary

11  judgment be granted and that this action be dismissed.

12                                    **BACKGROUND**

13      In its prior report and recommendation on defendants' motion to dismiss, Dkt. 99, the

14  undersigned provided an in-depth outline of the procedural history of this case and it is not

15  necessary to repeat that history again here.

16      On September 21, 2016, District Judge Settle adopted the undersigned's report and

17  recommendation, finding that defendants' motion to dismiss was denied as to plaintiff's claims

18  of retaliation alleging discrete acts after September 2012, including a claim of retaliation

19  regarding threats of transfer and a claim of retaliation regarding custody decisions in 2013 and

20  2015. Dkts. 99, 100. Defendants' motion to dismiss was also denied as to plaintiff's equal

21  protection claim. *Id.*

22      Thus, at this time, the following claims remain: (1) retaliation occurring after September

23  2012; (2) due process/state-created liberty interest claim in a particular custody/classification

24

REPORT AND RECOMMENDATION - 2

status; (3) violation of the Equal Protection clause of the Fourteenth Amendment; and (4) violation of the Supremacy Clause.

As an initial matter, the Court notes that defendants sent plaintiff a *Rand* Notice on February 3, 2017. Dkt. 109. Defendants sent this notice electronically to plaintiff. *See id.* This *Rand* Notice informed plaintiff that defendant had filed a motion for summary judgment by which she sought to have plaintiff's case dismissed, and that if plaintiff failed to submit his own evidence in opposition, summary judgment may be entered against him. *See id.*

Plaintiff did not file a response to defendants' motion for summary judgment and did not file any declarations or exhibits refuting defendants' presentation of the relevant events. *See* Dkt. Plaintiff's amended complaint was not signed under penalty of perjury and thus, may not be treated as an affidavit to oppose summary judgment. *See* Dkt. 19;*Cf. Schroeder v. McDonald,* 55 F.3d 454, 460 (9th Cir. 1995) (verified complaint based on personal knowledge of admissible evidence can constitute an affidavit in opposition to motion for summary judgment).Therefore, although plaintiff was warned that failure to submit evidence in opposition to defendants' motion could result in dismissal of his case, he  failed to refute any of the facts provided by defendants.

The Court notes that plaintiff did file several documents under the penalty of perjury in this matter. *See* Dkt. 11 (declaration in support of his motion for preliminary injunction) Dkt. 75 (response to defendants' motion to dismiss); Dkt. 78 (memorandum in support of plaintiff's motion for summary judgment). However, these pleadings were not submitted as a verified complaint or opposition to defendants' motion for summary judgment, and thus, will not be considered by the Court as a valid opposition to defendants' motion. *See Schroeder v.* 55 F.3d 454 at 460; *Forsberg v. Pac. N.W. Bell Tel. Co.,* 840 F.2d 1409, 1418 (9th Cir. 1988) (the Court is " not required to comb the record to find some reason to deny a motion for summary

1  judgment."); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)

2  (same).

3        And even if the Court were to consider these pleadings in opposition to defendants'

4  motion, plaintiff fails to show a genuine dispute of material fact. Plaintiff simply reiterates his

5  conclusory allegations of retaliation and due process violations, and fails to link any of the

6  named defendants to his allegations. *See* Dkt. 11 (plaintiff generally alleges defendants retaliated

7  against him); *id.* at 2 (plaintiff alleges that at some point in the past, his property was lost during

8  a transfer); *id.* (plaintiff alleges that another inmate was retaliated against); *id.* at 3 (plaintiff

9  contends that the DOC is aware that plaintiff has evidence of unlawful activity); *id.* at 3 (plaintiff

10  alleges that defendants threatened plaintiff with a transfer); Dkt. 75 at 2-3 (plaintiff alleges that

11  he was denied access to the courts, which plaintiff did not raise as a claim in his amended

12  complaint) *id.* at 4 (plaintiff alleges defendants said "sue me, I don't have to pay for it!" but fails

13  to identify any specifics around when or why this comment was made); *id.* at 4-5 (plaintiff

14  alleges he was transferred "all for the pleasure of DOC staff" failing to follow the law); *id.* at 5

15  (plaintiff was denied "all privileges"); Dkt. 78 (plaintiff makes arguments of law, not fact).

16        In summary, plaintiff has failed to provide admissible evidence to support his allegations,

17  as is his burden when responding to defendants' motion for summary judgment.

18                                    **FACTS**

19        Because plaintiff has not presented any evidence in opposition to defendants' motion, and

20  his complaint is not signed under penalty of perjury, the evidence tendered by defendants in

21  support of their motion is undisputed.  The following summarizes those facts.

22        In 2005, plaintiff was convicted of burglary, kidnapping, assault, three counts of rape,

23  harassment and intimidating a witness in Pierce County Superior Court, which resulted in 550

24

months of confinement in Department of Corrections ("DOC") custody. Dkt. 104 at 2 (citing Dkt. 19 at 15).

After plaintiff's conviction, the DOC created a classification category called "De Facto Life Without the Possibility of Parole" ("De Facto LWOPP"). Dkt. 104 at 16-17 (citing Dkt. 105, Declaration of John Campbell in Support of Defendants' Motion for Summary Judgment ("Campbell Declaration")). From 2007 to October 2015, plaintiff was housed at the Stafford Creek Corrections Center ("SCCC"). Dkt. 106, Declaration of Chris Grubb in Support of Defendants' Motion for Summary Judgment ("Grubb Declaration") at ¶ 4.

In 2010, plaintiff was classified as a De Facto LWOPP inmate and his custody level was changed from minimum 3 ("MI3") to medium. Dkt. 105; Dkt. 106, Exhibit 1. In 2013 and April 2015, the DOC held custody review hearings to review plaintiff's classification status. Dkt. 106 at ¶ 4-5. Plaintiff objected to his custody level and De Facto LWOPP classification at each of these hearings, but his medium custody level was maintained. *Id.* In October 2015, plaintiff was transferred to Coyote Ridge Corrections Center ("CRCC"). Dkt. 106 at ¶ 4.

The DOC defines a De Facto LWOPP inmate as one "[w]hose sentence structure puts their Earned Release Date ("ERD") past their reasonable life expectancy of 80 years for males or 85 years for females." Dkt. 105 at ¶ 4, (citing DOC Policy 300.380). Plaintiff is subject to the De Facto LWOPP label because his ERD is May 3, 2046, when plaintiff will be 85 years old. Dkt. 105 at ¶ 4.

The classification progression generally proceeds along the following track: close custody → medium custody → Minimum 3 custody ("MI3") → Minimum 2 custody ("MI2") →Minimum 1 custody ("MI1"). *Id.* at ¶ 5. According to the declaration of defendant Campbell, the DOC's classification system provides a framework whereby inmates progress through

1   decreasing levels of supervision and a corresponding increase in inmate responsibility. *Id.* In

2   order to maximize the benefits available to the greatest number of inmates, the DOC structures

3   this framework so that inmates closer in time to their release dates receive priority access to the

4   decreased supervision so long as their behavior warrants it. *Id.*   The DOC occasionally faces a

5   shortage of MI3 beds, and has made the strategic choice to prioritize those beds primarily for

6   inmates who (1) have earned it through consistent good behavior, and (2) are progressing toward

7   release into the community prior to their life expectancy date. *Id.* at ¶ 6. The DOC also considers

8   De Facto LWOPP inmates to pose a higher risk of escape because of their exceptionally long

9   sentences, and most De Facto LWOPP inmates have also been convicted of violent crimes or

10  serious sex offenses. *Id.*

11      For this reason, defendants state that the reason for plaintiff's present classification is due

12  to administrative priorities and DOC policy and have nothing to do with any claimed retaliation.

13                          **STANDARD OF REVIEW**

14      The purpose of summary judgment is to avoid unnecessary trials when there is no dispute

15  over the material facts before the court and the moving party is entitled to judgment as a matter

16  of law. *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1136 (9th Cir. 1975), *overruled on other grounds*

17  *by Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990).   The moving party is entitled

18  to summary judgment if the evidence produced by the parties permits only one conclusion.

19  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).   To determine if summary judgment

20  is appropriate, the court must consider whether particular facts are material and whether there is

21  a genuine dispute as to the material facts left to be resolved. Fed. R. Civ. P. 56(c).   The

22  materiality of a given fact is determined by the required elements of the substantive law under

23  which the claims are brought. *Anderson*, 477 U.S. at 248.   Factual disputes that do not affect the

24

REPORT AND RECOMMENDATION - 6

1  outcome of the suit under the governing law will not be considered.  *Id.*  Where there is a

2  complete failure of proof concerning an essential element of the non-moving party's case on

3  which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and

4  the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S.

5  317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented

6  through the prism of the substantive evidentiary burden"). However, when presented with a

7  motion for summary judgment, the court shall review the pleadings and evidence in the light

8  most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro

9  se complaint will be liberally construed  . . . ." *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.

10  1992) (*citing Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

11      Once the moving party has carried its burden under Rule 56, the opposing party cannot

12  rest solely on his pleadings but must produce significant, probative evidence in the form of

13  affidavits, and/or admissible discovery material that would allow a reasonable jury to find in his

14  favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 at n.11 (1986); *Anderson*,

15  477 U.S. at 249-50.

16                          **DISCUSSION**

17      In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

18  conduct complained of was committed by a person acting under color of state law and that (2)

19  the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or

20  laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other*

21  *grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

22  //

23  //

24

### A.  First Amendment

Plaintiff alleges that he was retaliated against for his litigation efforts and subjected to "unwarranted" transfers. Dkt. 19 at 3-4. With respect to plaintiff's allegations of retaliation after September 2012, plaintiff alleges he was transferred to the H2 unit in 2013, Dkt. 19 at 24, and that in 2015, plaintiff was placed in medium custody, Dkt. 19 at 25. Plaintiff alleges "retaliation against me for seeking redress by shipping me to another institution…." *Id.* at 25. However, plaintiff does not allege he was actually transferred to another facility. *Id.*

There are five basic elements for viable claim of First Amendment retaliation in the prison context: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of (3) the inmate's protected conduct and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim v. Cry*, 584  F.3d 1262, 1269 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)). "Retaliation against prisoners for their exercise of this right [to file grievances] is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim*, 584 F.3d at 1269 (citations omitted).

In order to survive summary judgment, the plaintiff bears the burden of showing that there was no legitimate penological objective to the defendant's actions.  *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).  A retaliation claim is not plausible if there are "more likely explanations" for the action.  *Iqbal*, 129 S.Ct. at 1951; *see, e.g., Pratt*, 65 F.3d at 808. In evaluating a retaliation claim, the Court is required to "'afford appropriate deference and flexibility' to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt,* 65 F.3d at 807 (*quoting Sandin,* 515 U.S. 472, 482 (1995) ("federal courts ought to afford appropriate deference and flexibility to state officials

1 trying to manage a volatile environment" (citations omitted)). "Security, of course, is the

2 paramount concern of prison administrators. As the Supreme Court has noted: 'The essence of a

3 correctional counselor's job is to maintain prison security.' " *Teamsters Local Union No. 117 v.*

4 *Washington Dept. of Corrections,* 789 F.3d 979 (9th Cir. 2015) (*quoting Dothard v. Rawlinson,*

5 433 U.S. 321, 335 6 (1977)) (further citation omitted). "[I]nstitutional security ... is 'central to all

6 other corrections goals.' " *Hudson v. Palmer,* 468 U.S. 517, 527–28, (1984) (*quoting Pell v.*

7 *Procunier,* 417 U.S. 817, 823 (1974)).

8          Defendants contend that plaintiff fails to establish any adverse action act or that there was

9 an absence of a legitimate penological goal. Dkt. 104 at 5-6.

10          The unrefuted evidence shows that defendants were not acting with a retaliatory motive.

11 Dkts. 106 (Grubb Declaration); Dkt. 108 (Jennings Declaration). Instead, the evidence shows

12 that in 2013, when plaintiff's custody level was reviewed and his medium custody status

13 maintained, the decision was made pursuant to DOC policy and plaintiff's De Facto LWOPP

14 designation. Dkt. 106 at ¶ 5; Dkt. 108 at ¶ 4. Defendant Grubb declares that he was not aware of

15 any of plaintiff's litigation or grievance activity and the decision was not made with any animus

16 towards plaintiff. *Id.* Defendants also present evidence showing that their actions advanced the

17 legitimate penological goal of preserving the safety of inmates and staff. Dkt. 106 at ¶ 6.

18 Defendant Grubb declares that classification decisions take many factors into consideration,

19 including past behavior and crimes of conviction. *Id.* Defendant Campbell declares that De Facto

20 LWOPP inmates pose a higher risk of escape because of their long sentences. Dkt. 105 at ¶ 6.

21 According to DOC policy, facility assignment and transfers are made in order to address safety

22 and security issues. *Id.* at Exhibits 1, 2. *See Barnett v. Centoni,* 31 F.3d 813, 815–16 (9th Cir.

23

24

1  1994) (prison officials have a legitimate penological interest in the preservation of institutional

2  order and discipline).

3      Because defendants have presented affirmative evidence negating an essential element of

4  plaintiff's claim, plaintiff, as the nonmoving party, "must do more than simply deny the veracity

5  of everything offered." *Matsushita,* 475 U.S. at 586; *see also* Fed. R. Civ. P. 56(e). In a case such

6  as this, the prisoner must show that "the prison authorities' retaliatory action did not advance

7  legitimate goals of the correctional institution or was not tailored narrowly enough to achieve

8  such goals." *Rizzo,* 778 F.2d at 532. Plaintiff bears the burden of proving "that there were no

9  legitimate correctional purposes motivating the actions he complains of." *Pratt,* 65 F.3d at 808.

10      Plaintiff did not oppose defendants' motion. *See* Dkt. As noted above, plaintiff's complaint

11  is not signed under penalty of perjury and therefore does not serve as evidence in connection

12  with the pending motion for summary judgment. *See* Dkt. 19. Plaintiff has not alleged or

13  provided any specific facts suggesting that defendants' actions did not advance legitimate

14  penological goals, as was his burden.

15       Even if the Court were to consider the allegations in plaintiff's complaint as a valid

16  opposition to defendants' motion, plaintiff only generally alleges that defendants' actions related

17  to his classification status were taken in retaliation and plaintiff was never provided with a

18  penological objective. *See* Dkt. 19 at 17. Plaintiff's conclusory allegation that he was retaliated

19  against is insufficient to survive defendants' motion for summary judgment.

20      Accordingly, defendants' motion for summary judgment as to this claim should be

21  granted.

22

23

24

**B.  Due Process**

Plaintiff alleges that his due process rights were violated when he was classified as a De Facto LWOPP prisoner and housed in medium custody. Dkt. 19. Plaintiff also alleges his De Facto LWOPP classification resulted in the denial of prison jobs and educational programs. *See id.*

As an initial matter, in what appears to be a part of his overarching due process claim, plaintiff alleges that in 2010, he was transferred to H6-Unit and his "phone access was cut off…making it so that he couldn't contact his family." Dkt. 19 at 20. Defendants argue that plaintiff does not have a liberty interest in phone access and that his claims are barred by the statute of limitations. Dkt. 104 at 10.  As previously held by Judge Settle, plaintiff may only bring due process claims that accrued after September 2012. Dkt. 89 at 6 ("decisions to maintain plaintiff's custody level in August 2011, April 2012, 2013, and April 2015 [] constitute discrete acts," and hence, decisions occurring before September 2012 are barred by the statute of limitations). *See Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012); *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002). Following this reasoning, plaintiff's claim related to the alleged 2010 denial of telephone access is barred by the statute of limitations. Therefore, defendants' motion for summary judgment as to this claim should be granted.

"It is well-established that '[t]he requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.'" *Burnsworth v. Gunderson,* 179 F.3d 771, 774 (9th Cir. 1999) (*quoting Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972)). "Under *Sandin*, a prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life."

1    *Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) (*quoting Sandin v. Conner*, 515 U.S. 472,

2    484 (1995). "There is no single standard for determining whether a prison hardship is atypical

3    and significant, and the 'condition or combination of conditions or factors [of the alleged

4    hardship] ... requires case by case, fact by fact consideration.'" *Ramirez v. Galaza*, 334 F.3d

5    850, 861 (9th Cir. 2003), *quoting Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996). "What less

6    egregious condition or combination of conditions or factors would meet the test requires case by

7    case, fact by fact consideration." *Kennan*, 83 F.3d at 1089.

8            "At least three factors from *Sandin* should be considered in each case: (1) whether the

9    conditions of confinement "mirrored those conditions imposed upon inmates in analogous

10   *discretionary* confinement settings, namely administrative segregation and protective custody,"

11   (2) the duration and intensity of the conditions of confinement; and (3) whether the change in

12   confinement would inevitably affect the duration of the prisoner's sentence." *Chappell v.*

13   *Mandeville,* 706 F.3d 1052, 1064–65 (9th Cir. 2013) (internal quotation marks omitted).

14           The undisputed evidence shows that between 2013 and 2015, plaintiff was held in

15   medium custody status in the SCCC general population. Dkt. 19; Dkt. 106 at ¶ 6. Medium

16   custody and MI3 are within "general population" at SCCC and are "90% similar." Dkt. 106 at ¶

17   7. At SCCC, medium custody "require[s] one additional officer on third (night) shift, two

18   sergeants rather than one, a toilet in each cell (as opposed to common toilets for use by the entire

19   unit), and a control booth in the housing unit." Dkt. 106 at ¶ 7. Further, SCCC inmates in

20   medium custody units, including H-Unit and G-Unit, where plaintiff was housed, have access to

21   telephones within the units. *Id.*

22           The evidence fails to show that the hardships alleged by plaintiff are atypical or

23   significant or a "major disruption" in plaintiff's environment. *Sandin,* 515 U.S. at 486

24

1    (Restrictions on "exercise, shower, hygiene and visitation privileges" do not amount to a major

2    disruption in an offender's environment.). While there may be *some* differences between medium

3    and minimum custody, these differences do not represent a departure that courts have recognized

4    that implicates a liberty interest. *See Walker v. Gomez,* 370 F.3d 969, 973 (9th Cir. 2004) (The

5    loss a prison job does not implicate a protected liberty interest.); *West v. Beauclair,* 338 F. App'x

6    716, 717 (9th Cir. 2009); *See also Baumann v. Arizona Department of Corrections,* 754 F.2d

7    841, 846 (9th Cir. 1985) ("General limitation of jobs and  educational opportunities is not

8    considered punishment."); *But see Jackson v. Carey*, 353 F.3d 750 (9th Cir. 2003) (allegations of

9    three-custody levels materially different from one another causing major disruption to prisoner's

10   environment sufficiently plead section 1983 due process claim); *Ramirez*, 334 F.3d at 861

11   (reversing and remanding dismissal of due process claim for application of *Sandin* factors where

12   prisoner alleged his segregated unit was overcrowded and violent, isolation severed ties with his

13   family, he was required to participate in psychiatric programs, and he was in confinement for

14   two years). There is no evidence that plaintiff's prison sentence was lengthened because of his

15   placement in medium custody or classification as De Facto LWOPP.  In addition, the evidence

16   shows that plaintiff was afforded access to a telephone while in medium custody.

17        Although plaintiff complains that his confinement in medium custody was less desirable

18   than MI3 custody, plaintiff has provided no evidence to show that he was subject to an atypical

19   or significant hardship and has failed to raise a question of material fact as to this claim. Thus,

20   defendants' motion for summary judgment should be granted with respect to plaintiff's due

21   process claim.

22

23

24

### C.  Equal Protection

Plaintiff asserts that his right to equal protection was violated when defendants failed to uniformly applied the De Facto LWOPP classification system. Dkt. 19 at 28. Plaintiff alleges that defendants allowed some inmates to advance in custody and participate in programs, work, education, housing assignment and obtain increased levels of liberty within the DOC while denying the same opportunities to others. *Id.* at 28.

Generally, "[t]o state a claim under § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with intent to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). However, where such an equal protection claim does not involve a protected class, a claim may arise under a "class of one" theory where the plaintiff claims that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("class of one" equal protection claim requires arbitrary discrimination). A plaintiff must show that defendants "(1) intentionally (2) treated [the plaintiff] differently than other similarly situated [individuals], (3) without a rational basis." *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citations omitted).

Defendants first argue that the "class of one" theory does not apply where the state has engaged in discretionary decision-making. Defendants rely on *Enquist v. Oregon Department of Agriculture*, which considered a former state employee's "class of one" claim against her former employer for firing her for "arbitrary, vindictive and malicious reasons." 553 U.S. 591, 595 (2008). The Supreme Court held that the "class-of-one theory of equal protection has no

application in the public employment context," 553 U.S. at 607, and numerous courts have

extended its rationale to other discretionary state actions. *Flowers v. City of Minneapolis*, 558

F.3d 794, 799 (8th Cir. 2009) (The Eighth Circuit has applied *Enquist*'s rationale to police

investigative decisions, finding that "[a] police officer's decisions regarding whom to investigate

and how to investigate are matters that necessarily involve discretion."); *Dawson v. Norwood*,

2010 WL 2232355, at *2 (W.D. Mich. 2010) (collecting cases rejecting "class-of-one theories in

the context of prison officials making discretionary decisions concerning inmates"). While

defendants' argument may ultimately have merit, the Court declines to rule on this ground as

even if the class of one theory applies in this case, plaintiff has failed to set forth any competent

evidence to show that he was treated differently from similarly situated individuals without a

rational basis. *See Olech*, 528 U.S. at 564.

Here, the evidence shows that the decision to classify plaintiff as De Facto LWOPP was

made pursuant to DOC policy. Dkt. 105; Dkt. 106. De Facto LWOPP inmates are housed in

medium custody as a security protection, due to their exceptionally long sentences, higher risk of

escape, and conviction for violent crimes and sexual offenses. Dkt. 105 at ¶ 6. The De Facto

LWOPP classification also allows for the use of minimum custody beds for inmates who are

reentering the community in the near future. *Id.* As with his other claims discussed above,

plaintiff merely has set forth conclusory allegations regarding defendants' actions, and has failed

to come forth with reliable evidence establishing discriminatory intent or purpose. Plaintiff's

general allegations of different treatment fail to raise a genuine dispute of material fact as to

whether defendants singled him out for De Facto LWOPP classification or whether the

classification decision was irrational. *Aros v. Fansler*, 548 F. App'x 500, 501 (9th Cir. 2013)

(State prisoner's reclassification and placement in maximum security facility did not violate

Fourteenth Amendment equal protection, where prisoner was not singled out and prison had security concerns regarding prisoner.). There is simply no evidence before the Court upon which a reasonable jury could conclude that plaintiff was intentionally discriminated against and thus, the Court finds that defendants' motion for summary judgment should be granted as to this claim.

### D. Supremacy Clause

Plaintiff alleges that RCW 4.92.075 violates the Supremacy Clause. Dkt. 19 at 33-34. The Court previously denied plaintiff's motion for summary judgment on this basis, as the Court failed to find a conflict between the cited statute and federal law. Dkt. 85; Dkt. 92. Thus, the Court concluded that plaintiff was not entitled to judgment of law. *Id.* In light of the Court's prior analysis, defendants' motion for summary judgment as to this claim should be granted, and the claim should be dismissed.

### E. Equitable Relief

Plaintiff also seeks declaratory and injunctive relief. Dkt. 19 at 41-43. However, the Court sees no reason why the equitable relief sought here would not simply duplicate a monetary damages award predicated on identical underlying liability. Plaintiff cannot seek such equitable relief where there is no underlying federal claim. Thus, the Court grants defendants' motion as to plaintiff's requests for equitable relief.

### F. Personal Participation and Qualified Immunity

As the Court concludes that plaintiff has failed to raise material issues of fact relating to his constitutional claims, it is not necessary to address the questions of qualified immunity, personal participation.

//

1      **G.  Strike Pursuant to 28 U.S.C. § 1915(g)**

2      Defendants request that the Court issue a "strike" against plaintiff under the Prison

3 Litigation Reform Act, 28 U.S.C. § 1915(g). Dkt. 104 at 19. Because summary judgment is

4 recommended on evidentiary grounds, and not for frivolousness, maliciousness, or failure to

5 state a claim, the dismissal of plaintiff's claims should not count as a strike.  *See El-Shaddai v.*

6 *Zamora*, 833 F.3d 1036, 1044 (9th Cir. 2016).

7                             **CONCLUSION**

8      Therefore, for the stated reasons, defendants' motion for summary judgment (Dkt. 104)

9 should be granted and plaintiff's claims should be dismissed with prejudice.

10      Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

11 (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure

12 to file objections will result in a waiver of those objections for purposes of *de novo* review by the

13 district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver of those

14 objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

15 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

16 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **April**

17 **28, 2017**, as noted in the caption.

18      Dated this 3rd day of April, 2017.

19

20

21                          _____

22                          J. Richard Creatura
                         United States Magistrate Judge

23

24